CHARLES F. ADAMS, JR., trustee, *vs.* ABIGAIL B. ADAMS & others.

Suffolk.   March 12. — June 20, 1885.   W. ALLEN, COLBURN, & HOLMES, JJ., absent.

A testator by his will gave the residue of his property in trust to pay all of the net income to his wife during her life, and at her death to distribute the fund among those who would take as distributees of his personal estate, if he had died intestate immediately after the death of his wife. At her death, the trust fund contained bonds for the payment of money, with semiannual coupons attached, payable at different times. The trustee collected the coupons as they matured. *Held*, that, under the Pub. Sts. *c.* 136, § 25, the amounts received by the trustee from the coupons not payable at or before the time of the death of the wife, being coupons for interest for six months, which had begun to run at her death, should be apportioned between her estate and the distributees under the will of the testator, according to the proportional part of the six months which in each class of coupons had elapsed at her death.

BILL IN EQUITY, by the surviving trustee under the will of Peter C. Brooks, to obtain the instructions of the court as to the disposition of the trust fund. Hearing before *Field*, J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*C. E. Stratton*, for the executors of the will of the testator's wife.

*F. E. Parker*, for some of the remaindermen.

FIELD, J. Peter C. Brooks, who died on June 3, 1880, by his will gave the residue of his property to trustees, upon trust to pay all of the net income (not required for the payment of two annuities) to Susan Oliver Brooks, his wife, so long as she should live, and at her death to distribute the fund (excepting so much as might be required for the payment of the two annuities) among those who would take as distributees of his personal estate by the laws of this Commonwealth, if he had died intestate immediately after the death of his wife. His wife died on February 2, 1884. At her death, the trust fund contained bonds for the payment of money issued by different corporations, or by the United States, with semiannual interest coupons attached, payable at different times, determined by the day when the principal sum of each of the different classes of bonds became payable. These coupons the trustee

has collected as they matured.    The bonds themselves were not
overdue.

The question is whether the amounts received by the trustee
in payment of the first set of coupons which matured after the
death of Mrs. Brooks are apportionable between her estate and
the distributees under the will of Mr. Brooks, and, if they are
apportionable, in what manner the apportionment should be
made.    If they are apportionable, it is by virtue of the Pub. Sts.
c. 136, § 25; Gen. Sts. c. 97, § 24; as they are not apportionable
at common law or in equity.    *Dexter* v. *Phillips*, 121 Mass. 178.
That the coupons can be severed from the bonds, and thus be-
come separate and independent obligations, with all the incidents
of debts that are distinct from the principal obligation, is true;
and one suggestion is, that each bond and its coupons are in
legal effect so many distinct obligations, payable, without inter-
est, at different fixed times, and that an investment in such obli-
gations is an investment in non-interest-bearing securities.    If
this view were adopted in its full scope, the result would be that
a trustee under such a trust ought not to make such an invest-
ment; and that the amounts received from coupons that matured
and were paid during the life of Mrs. Brooks ought not to be re-
garded as wholly income, although the question would remain
whether the present worth of each obligation at the time it was
purchased ought not to be computed, in order to ascertain what
portion of the sums received should, as between successive
takers, be regarded as principal and what as income.    It is evi-
dent, however, that this is not the real nature of the obligation
of a coupon bond.    The coupons are promises to pay certain
sums of money at certain times expressly as interest on the
bond.    They differ from the ordinary promises to pay interest
semiannually contained in promissory notes only in their capacity
of being detached from the bond, and thus acquiring all the in-
cidents of a distinct negotiable written promise.    If a trustee
should, immediately on the purchase of a coupon bond, cut off
the coupons and sell them, the question might not arise of the
proper distribution of the proceeds, as between principal and in-
come of the trust fund, because the proceeds might be regarded
as a part of the principal to be reinvested; but questions would
arise of the propriety of the trustee's holding, as a part of the

trust fund, a bond payable on time without interest; or of the duty of the trustee to pay thereafter to the life tenant the accretions in the value of such a bond occasioned by lapse of time. While the trustee holds the bond and its coupons as parts of the same investment, the coupons, as they mature and are paid, are regarded as income received from an investment of the trust property.

In *Harraden* v. *Larrabee*, 113 Mass. 430, John Henfield by his will gave the residue of his property in trust to pay the income to his son Joseph Henfield during his life. Joseph survived the testator and then died, and his wife, Sarah Henfield, became administratrix of his estate. It was alleged in her answer, and admitted, "that fifteen days' interest had accrued during her husband's lifetime upon the bonds in which the trust fund was invested." The court held that "to that part of the income she is entitled as his administratrix," citing the Gen. Sts. *c.* 97, § 24. It does not appear, however, whether the bonds were with or without coupons, or bonds of individuals or of corporations, or overdue or not when this "interest accrued."

In *Granger* v. *Bassett*, 98 Mass. 462, the executors "had apportioned the rents, and interest on bonds and notes," but not the dividends declared by corporations after the death of the life tenant; and the court held that "the Gen. Sts. *c.* 97, § 24, do not change the rule of law which held dividends from the profits of business of incorporated companies not to be apportionable. *Foote, appellant,* 22 Pick. 299. Such dividends are not only contingent, but uncertain in amount, until the expiration of the full period for which they are declared." It is argued that, if dividends are not apportionable under the Gen. Sts. *c.* 97, § 24, (Pub. Sts. *c.* 136, § 25,) the money received from collecting coupons is not; but this wholly depends upon the construction of the statute. The distinction between dividends and coupons is, not only that dividends are contingent and uncertain in amount, but that they do not in any sense exist as dividends, or as the separate property of the stockholders, until they are declared. "The acquisitions of banks and other similar corporations are mere incidents of the capital stock, and undistinguishable and inseparable from it till set apart by the declaration of a dividend by authorized officers." *Foote, appellant,* 22 Pick. 299, 304.

The many cases in which stock dividends have been declared
to be capital, and dividends payable in money to be income, all
proceed upon the ground that it is the declaration of the divi-
dend which creates it as a dividend; and the form of the declara-
tion, as shown by the votes of the corporation, construed in the
usual way, determines the character of the dividend, whether it
is a distribution of capital stock or a division of profits. *Minot*
v. *Paine*, 99 Mass. 101. *Daland* v. *Williams*, 101 Mass. 571.
*Rand* v. *Hubbell*, 115 Mass. 461. *Gifford* v. *Thompson*, 115
Mass. 478. But coupons attached to bonds are absolutely due
and certain to become payable at a fixed time; and although
the amount payable, in the technical language of the law, cannot
be said to accrue from day to day, as rent does not accrue from
day to day, yet the proportionate part of the coupon, which at
any time within the half-year covered by it is earned as interest
on the principal sum of the bond, can be exactly computed, and
its character as interest becoming due is not and cannot be
changed by subsequent events, so long as the coupons remain
attached to the bond, or are held by the same person who holds
the bond and as a part of the same purchase or investment.
The words "annuity, rent, interest, or income," in the Pub.
Sts. *c.* 136, § 25, were rightly held not to include dividends of
corporations, because dividends are not fairly within the natural
meaning of these words, and undeclared dividends differ substan-
tially from interest or income. But so long at least as the bond
with its coupons is held by the trustee as parts of one purchase
or investment, the coupons are promises to pay interest on the
principal sum of the bond, and the amounts received in payment
of such coupons, at or after their maturity, are literally and sub-
stantially amounts received for interest payable on the principal
obligation; and we have no doubt these amounts are within the
meaning of the words "interest or income" in the Pub. Sts.
*c.* 136, § 25.

There was much criticism at the bar upon the phraseology of
the Pub. Sts. *c.* 136, §§ 24, 25, which were doubtless intended
as reënactments of the St. of 1848, *c.* 310. It was said that the
first section of the St. of 1848, *c.* 310, was only declaratory of
the common law, and that the second section excepted from its
operation the first year from the death of the testator, and

treated rent, interest, and income, as well as annuities, as pay-able yearly, and as having each a " current year." We are concerned with these criticisms only so far as is necessary to determine the meaning of the words " such annuity, rent, inter-est, or income for the then current year shall be apportioned, and such person or his representative shall be entitled to receive a proportionate part thereof." It is said that the person who drew the second section had in mind nothing but an annuity payable yearly, or " a single payment measured by years," be-ginning at the testator's death ; and that the construction of the section is, that " the entire net income from all sources actually collected during the unfinished year of the life tenant's enjoy-ment " must be ascertained, and then that " the proportion of this net income which the part of the year during which the life tenant lived bears to the entire year " should be paid to the ex-ecutor of the life tenant's estate. But the general intent of this section is to give to the person entitled to an annuity, rent, interest, or income for life, or until the happening of a contin-gent event, if such person die, or such event happen, a portion of an annuity, or of rent, interest, or income, which may be said in a popular sense then to have accrued, and not to take from such person any part of an annuity, or of rent, interest, or in-come, which had become absolutely payable to him before he died or the event happened, although it became payable at a time intermediate between the beginning and the end of one of a series of years, reckoned from the death of the testator, and the person entitled to the annuity, rent, interest, or income died, or the event happened, during the same year. The gen-eral purpose of the statute was not to take from the life tenant anything which by the common law was absolutely his prop-erty, but to give to him or his representatives a share of an annuity, or of rent, interest, or income which the common law refused to give, on the ground that the annuity, rent, interest, or income could not be apportioned. The statute made that apportionable which the common law declared could not be apportioned. The language of the statute is appropriate to an annuity given by the testator and payable yearly from his death, and grammatically the provisions of the statute attach equally to annuities not payable yearly, and to rent, interest,

and income; but the general intent of the statute must prevail over the grammatical construction.

A trustee's account would usually be made up yearly, reckoning from the death of the testator, and the "then current year" may be taken to refer to the year running when the life tenant died, or the contingent event happened, and the statute may be taken to provide for the apportionment of the income in making up the accounts for that year. The established method of making an apportionment is to divide the amount received (when money is payable periodically at fixed times) according to that proportional part of the whole period for which the money is payable which had elapsed at the time of the death of the life tenant, or at the time of the happening of the event which terminated the right of the tenant. We are satisfied that the statute did not intend to abolish this rule and establish a different one. The amounts received by the trustee from the coupons not payable at, or before, the time of the death of Mrs. Brooks, and which were coupons for interest for six months, which had begun to run at the time of her death, must be apportioned according to the proportional part of the six months which in each class of coupons had elapsed at the time of her death.

*So ordered.*