MORRIS GRAY & another, trustees, *vs.* AUGUSTUS HEMENWAY & others.

Suffolk.   March 17, 18, 1910. — May 19, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Capital and Income.   Corporation*, Dividend.

A railroad corporation, which had a surplus of accumulated earnings amounting to more than $34,000,000, invested mostly in bonds and stocks of subsidiary companies and a part in cash, passed the following vote: "Resolved, that an extra dividend of fifty per cent be hereby declared," and also in the same vote declared a stock dividend of fifteen per cent with a statement of the reasons for making a stock dividend. Accompanying the notice of the dividends to the stockholders was a statement that a decision of the Supreme Court of the United States had declared it to be unlawful for the corporation to transport in interstate commerce coal owned by it and that a coal selling company had been organized with a capital of $6,800,000, with which as a buyer it was proposed that the railroad

corporation as a seller should contract to sell and deliver at the mines the coal mined and purchased by the railroad company, and the stockholders of the railroad company were invited to take stock in the coal company to an amount equal to one half of the fifty per cent cash dividend to which they were entitled and to appropriate half of that dividend to payment for the shares subscribed for. Accompanying the statement was a blank adapted to the use suggested. In a suit in equity by trustees, who owned stock of the railroad corporation, seeking instructions regarding whether the dividend should be paid to certain beneficiaries who were entitled to the income of the trust, or should be added to the capital of the trust, it was *held,* that the dividend was income and not capital.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 11, 1909, by trustees under the will of Augustus Hemenway, late of Milton, for instructions as to whether a certain dividend described in the opinion should be treated as income and distributed among certain life beneficiaries, or should be added to the trust fund as capital.

The case was heard by *Loring,* J., at whose direction a decree was entered that the dividend should be distributed by the trustees as income. The remaindermen appealed.

*J. G. Palfrey,* for the remaindermen.

*J. L. Thorndike,* for the defendants entitled to the income.

KNOWLTON, C. J. The only question raised by the appeal in this case is whether a certain dividend, made by the Delaware, Lackawanna and Western Railroad Company upon shares held by the plaintiffs as trustees under the will of Augustus Hemenway, is to be treated by them as income going to the life tenants, or as capital going to the remaindermen. At the time of this dividend the railroad company, in conducting its business, had accumulated a large surplus, amounting to more than $34,000,000, most of which was invested in stocks and bonds of subsidiary companies, and a part in cash. The vote of the directors declaring this dividend was in part as follows: " Resolved, That an extra dividend of fifty (50) per cent be hereby declared, payable on July 20th, 1909, to stockholders of record at the close of business on July 1st." This was the only part of the vote that referred directly to this subject. There followed in the same vote a declaration of a stock dividend of fifteen per cent payable in capital stock of the company, with a statement of the reasons for making the stock dividend.

In the notice sent to stockholders there was a statement that a decision of the Supreme Court of the United States had de-

clared it to be unlawful for the corporation to transport, in interstate commerce, coal owned by it, and that a coal selling company had been organized with a capital of $6,800,000, to which it was proposed that the railroad corporation as a seller should contract to sell and deliver at the mines the coal which it mined and purchased. Stockholders of the railroad company were invited to take stock in the new coal company to an amount equal to one half of the cash dividend to which they were entitled, and to appropriate half of the dividend to payment for the shares subscribed for. A blank was enclosed adapted to use for this purpose. Perhaps it was expected that most of the stockholders would accept the invitation; for it might have been anticipated that the stock in the coal selling company would soon be worth more than par.

But the dividend of fifty per cent was an absolute cash dividend, made in the usual form. While the stockholders had an option to take stock in a new company, they were not obliged to do so. The new corporation had no legal connection with the old one. There was a plan to make mutually profitable contracts between the two corporations, but neither had any control of the other in its corporate capacity. While the very great surplus held by the railroad company was legally capital as between life tenant and remainderman until it was divided, it was in fact the earnings of the original capital, and there was good reason why it, or a large part of it, should be divided and treated as income. When the corporation elected to divide it it became income, and the fact that the stockholders might use one half of it, if they chose, to pay for a subscription which they were invited to make to the capital stock of a new corporation, did not change its character. We do not think the facts warrant a finding that the making of the dividend payable in cash was intended by the directors to be a mere form, to cover up that which was really a stock dividend of the corporation. The case is governed by the decisions in *Minot* v. *Paine*, 99 Mass. 101, *Davis* v. *Jackson*, 152 Mass. 58, *Lyman* v. *Pratt*, 183 Mass. 58, *Hyde* v. *Holmes*, 198 Mass. 287, and *Hemenway* v. *Hemenway*, 181 Mass. 406, 411.

*Decree affirmed.*