Newport Trust Company *vs.* John A. Van Rensselaer, *et al.*

MARCH 6, 1911.

Present: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Trusts.  Dividends.  Life tenant and Remainderman.*

An extra dividend of fifty per cent. was declared by a corporation on its capital stock, and the stockholders were invited to subscribe to the capital stock of a subsidiary company, in which event one-half the dividend would be paid for such subscription and the other half would be paid in cash to the stockholder.

A trustee took the new stock and received the other half in cash.  Upon the question as to whether such cash dividend should be paid over to the life tenant as income or added to the principal of the fund:—

*Held,* that, there being nothing to show that it was not a dividend of profits earned in the regular course of business, and during the term of the life estate, it came within the general rule that cash dividends go to the life tenant.

(2)  *Same.*

As a general rule cash dividends go to the life tenant, and stock dividends to the remainderman.

Bill in Equity.  Certified to Supreme Court.

Parkhurst, J.  This is a bill in. equity brought by the Newport Trust Company, as trustee under the will of Frances M. Hoyt, deceased, to determine whether certain money should be paid to the life-tenant or remainderman, and is certified to

the Supreme Court, on the ground that it involves the construction of a will and is ready for final decree.

The will of Frances M. Hoyt, which was probated December 4, 1905, at Newport, R. I., provided as follows:

"Whereas there are certain securities belonging to me now in the hands of William A. Duer the income from which he has collected and paid over to Mrs. John K. Van Rennselaer, I do hereby bequeath the said securities to said William A. Duer, in trust, with full power to continue or change the investments from time to time and to pay the net income therefrom to Mrs. John K. Van Rennselaer for and during her life, and upon her death to pay over the principal of said trust fund to her son John A. Van Rensselaer, absolutely free and clear of any trust."

William A. Duer, predeceased testator, and the Newport Trust Company was by a decree of the Superior Court, entered April 9th, 1906, appointed trustee in his stead.   Part of the trust has consisted of 100 shares of the Delaware Lackawanna & Western Railroad Company.   That company, in order to comply with a decision of the United States Supreme Court under the provisions of the "Hepburn Act," was instrumental in organizing a coal company, and declared a dividend of fifty per cent. on the capital stock payable July 20, 1909, to stockholders of record on July 1st, 1909, as appears by the following circular:

"To the Stockholders of the

" Delaware, Lackawanna and Western Railroad Company.

"An extra dividend of fifty per cent. has been declared by the Board of Managers on the capital stock of the company, payable on July 20th, 1909, to stockholders of record at the close of business on July 1st, 1909.

"In conformance with the decision recently rendered by the United States Supreme Court, declaring that this Company cannot lawfully transport in interstate commerce coal owned by it, a coal selling company has been organized under the Laws of the State of New Jersey, under the name of the Delaware, Lackawanna & Western Coal Company, the capital stock

of which will be $6,800,000.00, divided into .136,000 shares of $50.00 each par value.

"It is proposed that the Delaware, Lackawanna & Western Railroad Company, as the Seller, shall contract with said Coal Company as the Buyer, to sell and deliver the coal mined and purchased by the Railroad Company to the Coal Company at the mines.

"The stockholders of the Railroad Company are hereby invited to subscribe to the capital stock of the Coal Company at the rate of one share of the latter for each four shares of the capital stock of the Railroad Company held by the several stockholders as shown by the books of the Company at the close of business July 1st, 1909.

"As it is deemed undesirable to issue part shares as scrip, or otherwise, any stockholder whose pro rata Coal Company subscription may entitle him to a part share, may, on payment in cash of the additional amount necessary, acquire a full share instead of the part share alloted to him.

"Herewith subscription blank which each stockholder should sign and have duly witnessed in the event he desires to subscribe for the stock of the Coal Company on the basis set forth herein. Such blank contains an order on the Treasurer of the Company authorizing and directing that one-half of the dividend of fifty per cent. due and payable on July 20th, 1909, be paid to the Coal Company in satisfaction of the subscription of such stockholder to the capital stock of the Coal company. The other half of such dividend will, of course, be paid in cash. Certificate for the number of shares of stock so paid will be issued in the name of and delivered to the stockholders as the latter may direct.

"It is urged by the Company's legal advisors that the proposed selling contract be made operative as early as possible.

"It is therefore respectfully requested that the stockholders of the Company take prompt action on the several matters submitted to them hereby."

The trustee took half the dividend in stock in the new company, and elected to take the other half in cash. The cash

amounted to $1,250, and the question is whether this latter sum should be paid over to the life tenant as income, or added to the principal of the fund. The beneficiary for life, Mrs. John K. Van Rensselaer, contends that it should be paid to her.

(1)   By the circular above quoted, it appears that the dividend declared is on the capital stock, and that at least 25 per cent. was to be paid in cash and the whole might be; that it is clearly optional with the stockholders to take the whole dividend in cash, or to take one-half in cash, and subscribe the other one-half for the stock in the new coal company, as they see fit; that the stockholders were not obliged to subscribe for the stock in the new company; that the first half of the dividend was paid to the complainant in cash, and is now held by it and is the fund in dispute in this cause.

Although the dividend here in question is called an "extra" dividend, there is nothing to show that it was not a dividend of profits earned in the regular course of business, and during the term of the life-estate, and we find nothing in the facts appearing in this case to take it out of the general rule that cash dividends go to life tenant. This rule is set forth in 2d Thompson on Corporations, 1st ed., section 2201, as follows: "Keeping in mind the foregoing principles there is a strong presumption that cash dividends, declared while the corporation is a going concern are dividends of profits or earnings merely; for a corporation has no power to declare a dividend of its capital except in liquidation, or to reduce the capital where it is authorized to do so by its governing statute. There is no difficulty in holding, then, that an ordinary cash dividend of a going corporation, goes to the life tenant, and not to the remainderman, if he is the beneficial holder of the stock at the time it is declared." And further, the author quotes Mr. Justice Peters, in *Richardson* v. *Richardson*, 75 Me. 570, in part, as follows (p. 574): "But we are well convinced that the general rule, deducible from the latest and wisest decisions, declares all money dividends to be profits and income belonging to the tenant for life, including not only the usual annual dividend but all extra dividends or bonuses payable in cash from the earnings of the

Company." . . . " We think the true rule to be that when a
dividend upon its stock is declared by a corporation, it belongs
to the person holding the stock at the time of the declaration,
whether the holder be a life tenant, or remainderman without
regard to the source from which or the time during which the
profits and earnings divided were acquired by the Company."
And see *Reed* v. *Head*, 6 Allen, 174; *Simpson* v. *Moore*, 30 Bar-
bour, 637. So says Taylor on Private Corporations, section 799:
" There is little doubt that a reasonable amount of profit earned
before the testator's death but declared in the shape of an
ordinary cash dividend after that event, is income and belongs
to the life tenant." See also, Cook on Stock and Stockholders,
§ 552; *Bates* v. *MacKinley*, 31 Beav. 280; *Millen* v. *Guerrard*,
67 Ga. 284.

A case not unlike the present in principle, is *Davis* v. *Jack-
son*, 152 Mass. 58. There the stockholders voted to increase
the capital stock by 1,000 shares, and the stockholders were
invited to subscribe in proportion to their shares if they paid
within thirty days. The directors at the same time, voted to
declare a dividend of $25 a share. This was exactly what was
required to enable the stockholders to subscribe for the new
stock if they so desired. They were not bound, however, to
subscribe. The earnings of the corporation were sufficient to
pay the dividends, but if used for that purpose it would be neces-
sary to raise money to pay for additions which had been made
to the capital. Held: that the transaction was a cash divi-
dend and passed to the life tenant as income. Said the court
(p. 59): "The argument for the remainderman is, that the
transactions of the company, viewed as a whole, are in sub-
stance a stock dividend. It is tacitly assumed that the com-
pany had appropriated its earnings to the improvements which
the stock represented before the dividend was declared, and
then the conclusion is drawn that the dividend represented
these improvements. But in the opinion of a majority of the
court, it is evident that, if we look at either extreme of the facts,
the life tenants ought to prevail. The dividend was declared
as a cash dividend, and it represented what originally at least

were earnings of the company." . . . "If the plaintiff trustees had seen fit to keep the money and to sell their rights, they could have done so, and neither the corporation nor the *cestuis que trust* could have complained. Of course, the trustees could not affect the respective rights of the defendants by their determination. If they had kept the dividend it would have been a bold claim on the part of the remaindermen that it was theirs because the corporation was in debt for additions to capital." . . . "A dividend of cash representing profits is none the less to be taken as income, because the stockholder is at liberty to invest it at par in stock which is worth more than par, if he is also at liberty to sell the right to subscribe for the stock." See also 2d Thompson on Corporations, 1st ed., section 2208; *Minot* v. *Paine*, 99 Mass. 101; *Adams* v. *Adams*, 139 Mass. 449.

There is no decision in Rhode Island on the exact point in issue, but the several cases, while they decide in favor of the remainderman in the particular case, nevertheless recognize the principles stated above. In *Parker* v. *Mason*, 8 R. I. 427, the bank was authorized by an act of the General Assembly to reduce the par value of its capital stock, because of certain supposed losses. When the supposed losses were recovered the bank issued additional stock to its shareholders. It was held that under the provisions of the will, this new stock did not pass to the life tenant as "income, profits and interest," but that the new shares simply took the place of the property for which they were issued.

In *Brown and Larned, Petitioners*, 14 R. I. 371, the syllabus of the case recites: "New shares of stock in a corporation representing its surplus property and distributed to its stockholders are not considered as income and do not belong to life tenant." Said the court, on page 372: "The surplus property of the corporation, which is represented by such stock, is still retained by the corporation and managed and applied in the prosecution of the business."

A similar case was *Greene* v. *Smith*, 17 R. I. 28, where the corporation voted to increase its stock, and offered the new

shares, which were at a premium, to the stockholders at par, at the rate of one new to every six shares belonging to them. Held: that the new shares did not belong to the life tenant as income, but were part of the principal.

(2)    These cases are entirely consistent with the principles above set forth; namely, that cash dividends go to the life tenant and stock dividends go to the remainderman.

In accordance with the authorities cited above, this court holds that the amount of $1,250 received by the trustee, complainant, is a cash dividend, and is income which belongs to the life tenant, Mrs. John K. Van Rensselaer, and is to be paid to her.

The parties may submit a decree, in accordance herewith, for the approval of the court.

*Sheffield, Levy and Harvey, William Paine Sheffield,* for complainant.

*Max Levy, William R. Harvey,* for respondent.