## APPEAL OF W. J. HUNT.

Docket No. 5791.    Decided October 30, 1926.

*Held,* on the evidence, that the dividend received by the petitioner was a cash dividend and not a stock dividend.

*A. Lee Rawlings, C. P. A.,* for the petitioner.
*Thomas P. Dudley, Jr., Esq.,* for the Commissioner.

This is an appeal from the determination of a deficiency in income tax for 1918 in the amount of $2,219.62. The deficiency arises from the action of the Commissioner in increasing the income reported by the petitioner on account of amounts claimed by the petitioner to be stock dividends.

### FINDINGS OF FACT.

The petitioner is a resident of Norfolk, Va. On January 1, 1918, he owned 275½ shares of the capital stock of the Merchants Bakery, Inc., of Norfolk. The par value of this stock was $100 per share. On January 2, the petitioner acquired 148 additional shares of stock of the same company, as hereinafter set out.

At a meeting of the board of directors of the above-named company, held on December 1, 1917, a resolution was adopted wherein the board recommended to the stockholders that the capital stock of the corporation be increased from $65,000 to $100,000, the maximum allowed by the charter, and that the additional issue of $35,000 of capital stock be offered to the stockholders at par in proportion to their respective holdings, and, if any of the stockholders did not take their allotment, then the amount so refused should be offered to the stockholders in proportion to their respective holdings.

The stockholders of the Merchants Bakery, Inc., on December 1, 1917, and during the taxable year, were W. J. Hunt, F. H. Hobbs, R. Randolph Hicks, T. G. Hobbs and Walter Dickson.

At a special meeting of the stockholders of the Merchants Bakery, Inc., called on December 1, 1917, the recommendation of the board of directors submitted on the same date was by resolution adopted by the stockholders, and the capital stock was increased to $100,000 in accordance with the recommendations made by the board of directors, which resolution was unanimously adopted.

On December 24, 1917, at a meeting of the board of directors of the Merchants Bakery, Inc., the following resolution was unanimously adopted:

Resolved: that the business of the company showed that its operation had been so prosperous in the year 1917 as to justify the payment of an extra dividend. Now, Therefore, Be it resolved that an extra dividend of $60 per share is hereby declared payable on the stock outstanding as of January 1, 1917.

Subsequent to the adoption of the resolutions by the board of directors and the stockholders at the meeting held on December 1, 1917, but prior to the declaration of the dividend on December 24, 1917, it was agreed between all the stockholders, including those who were members of the board of directors, that they would take stock and pay for it with the money distributed by the corporation to the extent of $35,000, and that the checks received from the corporation should be deposited to the credit of the individual stockholders whose checks in payment for stock would be simultaneously deposited. When the contemplated dividend was declared the corporation had a surplus on hand at the date of the resolution, December 24, 1917, in excess of $39,000.

At the meeting of the directors on December 24, 1917, the stockholders delivered to the treasurer of the corporation their personal checks aggregating $35,000 as follows:

| | |
|---|---:|
| W. J. Hunt | $14,800 |
| F. H. Hobbs | 11,300 |
| R. Randolph Hicks | 5,700 |
| T. G. Hobbs | 2,900 |
| Walter Dickson | 300 |
| | 35,000 |

The above checks were given in payment for stock on December 24, 1917, but were not to be presented for payment until the corporation's checks representing the pro rata share of each stockholder of the dividend were deposited. Some of the stockholders who signed the above checks had no money in the banks upon which they were drawn; others were for amounts in excess of the respective balances of their personal bank accounts, and by agreement were held by Merchants Bakery, Inc., until January 2, 1918, when the checks of the corporation were made out in favor of all of the stockholders in amounts aggregating $39,000 as follows:

| | |
|---|---:|
| W. J. Hunt | $16,530 |
| F. H. Hobbs | 12,570 |
| R. Randolph Hicks | 6,360 |
| T. G. Hobbs | 3,240 |
| Walter Dickson | 300 |
| | 39,000 |

The treasurer of the Merchants Bakery, Inc., deposited the checks issued to the stockholders by the company in amounts aggregating $39,000 in the bank to the personal credit of the stockholders and simultaneously deposited the stockholders' checks which he held aggregating $35,000, which checks had been endorsed by the respective stockholders. Prior to such deposit on January 2, 1918, the cash of the company in the bank was $10,600.

On the same day, January 2, 1918, the stockholders received their additional·stock in the corporation.

TRAMMELL: The question involved in this appeal is whether the dividend paid by the Merchants Bakery, Inc., is a stock dividend or a cash dividend.

It is contended by the petitioner that his distributive share of the dividend declared by the company was a stock dividend to the extent of the amount which equaled the amount of the check drawn by him, which was not to be paid until the check of the corporation representing a dividend was deposited, and that only the amount of the cash received in excess of the check deposited by him represented a cash dividend.

The taxpayer relies in support of his contention upon the cases of *United States* v. *Mellon*, 281 Fed. 645; *United States* v. *Davison*, 1 Fed. (2d) 465; and *Appeal of Theresa Zellerbach*, 2 B. T. A. 1076.

Whether, in any case, a dividend is a stock or cash dividend is a question of fact and the question must be decided upon the peculiar facts in each case. While the Board will look through form to substance in order to arrive at what actually occurred, it is sometimes difficult to determine what is mere form and what is in fact substance. The form which a transaction takes frequently determines what the transaction is.

In the case of *Eisner* v. *Macomber*, 252 U. S. 189, the United States Supreme Court defined what a stock dividend is. In that case it was argued by the Government that there was no essential difference between a stock dividend and a transaction whereby the corporation declared a dividend in cash with the privilege of purchasing stock with that cash. In support of its contention that there was no essential difference between the two transactions, the Government cited the case of *Tax Commissioner* v. *Putnam*, 227 Mass. 522; 116 N. E. 904. In that case the court stated as follows:

In essence the thing which has been done is to distribute a symbol representing an accumulation of profits, which instead of being paid out in cash is invested in the business, thus augmenting its durable assets. In this aspect of the case the substance of the transaction is no different from what it would be if a cash dividend had been declared with the privilege of subscription to an equivalent amount of new shares.

That court reasoned upon the theory that, since a dividend declared in cash with the privilege of purchasing stock was taxable, a dividend declared and paid in stock was also taxable.

The Supreme Court, however, did not accept this reasoning of the Massachusetts court, and in reply to that argument said (252 U. S. 217):

We cannot accept this reasoning. Evidently, in order to give a sufficiently broad sweep to the new taxing provision, it was deemed necessary to take the symbol for the substance, accumulation for distribution, capital accretion for its opposite; while a case where money is paid into the hand of the stockholder with an option to buy new shares with it, followed by acceptance of the option, was regarded as identical in substance with a case where the stockholder receives no money and has no option. The Massachusetts court was not under an obligation, like the one which binds us, of applying a constitutional amendment in the light of other constitutional provisions that stand in the way of extending it by construction.

In this connection Mr. Justice Brandeis, in his dissenting opinion, used the following language (252 U. S. 225):

It is conceded that if the stock dividend paid to Mrs. Macomber had been made by the more complicated method pursued by the Standard Oil Company of Kentucky, that is, issuing rights to take new stock *pro rata* and paying to each stockholder simultaneously a dividend in cash sufficient in amount to enable him to pay for this *pro rata* of new stock to be purchased—the dividends so paid to him would have been taxable as income whether he retained the cash or whether he returned it to the corporation in payment for his *pro rata* of new stock.

The Supreme Court did not consider that the receipt of cash by a stockholder and the purchase of stock with that cash was the equivalent in substance to the receipt of dividends in stock directly. The reasoning of the Massachusetts court to this effect was expressly rejected.

The Supreme Court further said (252 U. S. 211):

We are considering the taxability of *bona fide* stock dividends only.

The court further said, in answering the argument of the Government that stock dividends were taxable (252 U. S. 213):

It [the Government] contends that the tax may be laid when earnings " are received by the stockholder," whereas he has received none; that the profits are " distributed by means of a stock dividend," although a stock dividend distributes no profits; * * * that the " profits are segregated from his former capital, and he has a separate certificate representing his invested profits or gains," whereas there has been no segregation of profits, nor has he any separate certificate representing a personal gain, since the certificates, new and old, are alike in what they represent—a capital interest in the entire concerns of the corporation.

In this case, however, there was a segregation of the profits of the corporation. The corporation issued its check to the stockholders for their proportionate share of the corporate earnings. Each stockholder endorsed the check and turned it back to an officer of the corporation who deposited to the stockholder's credit, whereupon the checks given by the stockholders for stock were presented

and paid. The fact that the stockholders, in accordance with an agreement entered into among themselves, purchased stock from the corporation with a portion of the money received, is to our mind not controlling. It does not mean that the stockholder did not receive from the corporation his proportionate part of the earnings. His proportionate part of the profits of the corporation became separated from the corporate funds and in every substantial sense of the word was income derived and separated from capital. What a stockholder does with his part of the earnings of the corporation when those earnings have become separated from corporate funds and become the property of the stockholder, seems to us to be not material in the consideration of the case.

In the *Appeal of Edward Langenbach*, 2 B. T. A. 777, the Board used the following language:

In *United States* v. *Phellis*, 257 U. S. 156, and *Rockefeller* v. *United States*, 257 U. S. 176, the court considered situations where the stockholders received, not cash, but stock in a new corporation holding some of the same assets which the old stock had theretofore represented; and the stockholder was held taxable upon the value of the stock thus received as a dividend, notwithstanding that the new stock was part of a reorganization. In those cases the stockholders urged that they were merely receiving new symbols of ownership of the same interest their right in which had never changed and never come to realization; but this the court declined to adopt. Here the corporation declared and the stockholder received a *cash* dividend, which, were it not for his voluntary contract, he had under his complete dominion. At the moment of its receipt he realized income, and what he did with it thereafter, irrespective of how soon, can not change its character at that time.

In this case the petitioner actually received the check of the corporation representing his distributive share of the profits which the corporation had accumulated and he bought stock in the corporation with the funds received. It seems to us that such a situation involves the principle and the reasoning upon which the Massachusetts court, in the case of *Tax Commissioner* v. *Putnam*, *supra*, held that a stock dividend was taxable, which reasoning and analogy the United States Supreme Court expressly rejected in the case of *Eisner* v. *Macomber*, *supra*.

It seems to us that there is a material difference between a transaction whereby a corporation actually distributes its profits in the way of a dividend to its stockholders and then receives back a portion thereof as a subscription price for stock, and a transaction where a corporation does not in fact segregate and distribute any of its profits but merely distributes a symbol representing the proportionate ownership in all profits of the corporation.

In the *Appeal of Eugene E. Paul*, 2 B. T. A. 150, the Board used the following language:

Upon the declaration of a dividend the right of the stockholders becomes fixed and the dividend becomes segregated from the stock and exists independently

of it; the acquisition of new stock of the corporation with the dividend checks constitutes a purchase of the stock and the dividend was consequently realized as income at the time the checks were received.

It was urged by the petitioner that he and all the other stockholders had an oral agreement to the effect that they would take the dividend in cash but would apply it on the purchase of new stock. It does not appear, however, that this was the action of the corporation or that any such agreement was entered into by the corporation. Without such an agreement on the part of the corporation itself, the stockholders were not legally bound to subscribe for the new stock, nor were they under any legal duty to apply the checks in payment for new stock. The agreement among the stockholders can not alter the action of the corporation in declaring a cash dividend. Agreements made by stockholders as such are not to be treated as the contract of the corporation unless the corporation formally ratifies or adopts them. *De La Vergne Co.* v. *German Savings Institution*, 175 U. S. 40; *Moore & Handley Hardware Co.* v. *Towers Hardware Co.*, 87 Ala. 206; 6 So. 41.

By the overwhelming weight of authority, when the power to do particular acts or general authority to manage the affairs of the corporation is vested in the directors or trustees, it is vested in them not as individuals, but as a board, and as a general rule they can act so as to bind the corporation, assuming that there is no ratification or estoppel, only when they act as a board and at a legal meeting. *Kansas City Hay-Press Co.* v. *Devol*, 72 Fed. 717; *Ames* v. *Goldfield Merger Mines Co.*, 227 Fed. 292.

The members of the governing body of a corporation are agents of the corporation only as a board and not individually. Hence it follows that they have no authority to act save when assembled at a board meeting. The separate action individually of the persons composing such governing body is not the action of the constituted body of men clothed with corporate power. *Commercial Brewing Co.* v. *McCormick*, 225 Mass. 504; 114 N. E. 812; *Citizens' Securities Co.* v. *Hammel*, 14 Cal. App. 564; 112 Pac. 731.

In this case, even if it be conceded that the individual members of the board of directors could have legally bound the corporation, it is not alleged by any witness that the agreement referred to was other than an agreement between the stockholders, those who were to receive the dividends, and it related to what they would do with their dividends and not to the manner in which the corporation would distribute the dividends. There is no evidence that the directors as such undertook to act for the corporation. The resolution declaring the dividend did not recognize any such agreement as having been made. It is true that the corporation may have acted and very likely did act upon the assumption that the stockholders,

in accordance with the agreement among themselves, would purchase stock with their dividends, but this is not sufficient to change what was declared by the corporation to be a cash dividend to a stock dividend. The stockholders were not legally bound to take stock.

We are not unmindful of the line of decisions holding that corporations are liable on contracts made by certain directors or stockholders not based on formal action of the board of directors, but an analysis of the leading decisions to that effect indicates that they were based on estoppel on the part of the corporation on account of the fact that it had received benefits under the contracts, because of implied authority of such individuals, because the corporation ratified the action, or for other reasons which do not exist in this case.

It is also a general rule of law that a corporation is a distinct legal entity separate and apart from the individual stockholders who compose it and is not affected by any personal rights, obligations or transactions of the stockholders. *McCaskill Co.* v. *United States*, 216 U. S. 504; *Eisner* v. *Macomber, supra.*

When the dividend was declared by the corporation the surplus out of which it was declared became segregated from its other assets and the corporation became the debtor of the stockholder and the stockholder became the creditor of the corporation. *United States* v. *Guinzburg*, 278 Fed. 363; *Staats* v. *Biograph Co.*, 236 Fed. 454; *Plant* v. *Walsh*, 280 Fed. 722.

The corporation as a debtor then held the dividends for the stockholder, and he or his representatives could maintain an action for the recovery thereof. *Wheeler* v. *Northwestern Sleigh Co.*, 39 Fed. 347; *Hooper* v. *Sage*, 112 N. Y. 530; 20 N. E. 350; *Bright* v. *Lord*, 51 Ind. 272; 19 Am. Rep. 732.

The dividend which was declared in this case, according to the resolution by which it was declared, was a cash dividend. The fact that the recipients of that dividend agreed to apply it to the purchase of stock is not sufficient to change the nature of the transaction. It is not material what the recipients of the dividend agreed to do with it when it was received. A violation of the agreement of the stockholders to purchase stock with that dividend would not have given the corporation a right to sue for the application of that money to the purchase of stock.

In the case of *Hyde* v. *Holmes*, 198 Mass. 287; 84 N E. 318, the dividends were paid in cash with an option given to use same in the purchase of stock, and the stock was increased on the same day in the same amount as the cash dividends. It was held to be a cash dividend.

In the case of *Cox* v. *Gaulbert's Trustee*, 148 Ky. 407; 147 S. W. 25, the dividends were declared payable in cash. An increase was

authorized in the capital stock equal in amount to the dividend. Though called a cash dividend, it was intended and understood to be paid in new stock. It was held to be in effect a cash dividend.

In the case of *Ballantine* v. *Young*, 79 N. J. Eq. 70; 81 Atl. 119, the case was stated by the court as follows:

On April 28, 1909, the surplus [of the Central Trust Company] had increased to $15,579,696.65. In June, 1909, its capital stock, by appropriate action on the part of the directors and stockholders, was increased to $3,000,000. The stockholders were given the right to subscribe at par for the new issue of $2,000,000; that is, each stockholder might subscribe for two new shares for every old one he held. * * *

The first question is, Who is entitled to the dividend of the Central Trust Company issued under the circumstances above described, the life tenants or the remaindermen?

### The court said (81 Atl. 120):

It seems to me plain that the dividend is a cash dividend, and not a so-called stock dividend. There is nothing, either in the substance or form of the transaction, that indicates that it was other than what it purports to be. *Gray* v. *Hemenway*, 206 Mass. 126, 92 N. E. 31, 138 Am. St. Rep. 377. It is true that the company at the time it declared the dividend gave an option to subscribe to the new stock, and that its officers anticipated that the new stock would be paid for with the cash dividend; but it did not attempt to compel the subscription. The stockholder could do as he pleased. * * * and (3) it was evidently made for the special - purpose of enabling the stockholders to avail themselves of the new subscription.

In the case of *Davis* v. *Jackson*, 152 Mass. 58; 25 N. E. 21, the facts were as follows:

On April 26, 1889, at a stockholders' meeting, it was voted that the capital stock be increased by 1000 shares, of $100 each, and that the stockholders be entitled to subscribe in proportion to the number of their shares, if they paid within 30 days. This vote allowed the stockholders to take one new share for every four held by them. At a meeting of the directors, held on the same day, at the close of the stockholders' meeting, an extra dividend of $25 a share was declared. This dividend was exactly sufficient to enable the stockholders to pay for their new stock if they were so minded. But they were not bound to take the stock; and if they preferred to keep the money, and to sell their rights to subscribe for stock, they could do so, as some of them did in fact. * * * The earnings of the company were sufficient to pay the dividend, but if they were used to pay the dividend then it was necessary to raise about an equal amount to pay for additions which had been made to the capital, and which had increased its value at least 25 per cent. above the par value of the old stock. The directors would testify, if material, that they discussed the question of a stock dividend, and understood that it was not permitted by law, and declared the extra dividend as a substitute.

The argument for the remainderman is that the transactions of the company, viewed as a whole, are in substance a stock dividend. It is tacitly assumed that the company had appropriated its earnings to the improvements which the stock represented before the dividend was declared, and then the conclusion is drawn that the dividend represented those improvements. But, in the opinion of a majority of the court, it is evident that, if we look at

either extreme of the facts, the life-tenants ought to prevail. The dividend was declared as a cash dividend, and it represented what, originally at least, were earnings of the company.

In the case of *Newport Trust Co.* v. *VanRensselaer*, 32 R. I. 231; 78 Atl. 1009, it was held, following the decision in the case of *Davis* v. *Jackson*, supra:

The earnings of the corporation were sufficient to pay the dividends; but, if used for that purpose, it would be necessary to raise money to pay for additions which had been made to the capital. Held, that the transaction was a cash dividend, and passed to the life tenant as income. Said the court: "The argument for the remainderman is that the transactions of the company, viewed as a whole, are in substance a stock dividend. It is tacitly assumed that the company had appropriated its earnings to the improvements which the stock represented before the dividend was declared, and then the conclusion is drawn that the dividend represented these improvements. But in the opinion of a majority of the court it is evident that, if we look at either extreme of the facts, the life tenants ought to prevail. The dividend was declared as a cash dividend, and it represented what originally at least were earnings of the company. * * * If the plaintiff trustees had seen fit to keep the money and to sell their rights, they could have done so, and neither the corporation, nor the cestui que trust could have complained. Of course, the trustee could not affect the respective rights of the defendants by their determination. If they had kept the dividend, it would have been a bold claim on the part of the remaindermen that it was theirs because the corporation was in debt for additions to capital. * * * A dividend of cash representing profits is none the less to be taken as income, because the stockholder is at liberty to invest it at par in stock which is worth more than par, if he is also at liberty to sell the right to subscribe for the stock." See, also, Thompson on Corporations, §2208; *Minot* v. *Paine*, 99 Mass. 101, 96 Am. Dec. 705; *Adams* v. *Adams*, 139 Mass. 452, 1 N. E. 746.

When the dividend in this case was declared it took the form of a cash dividend. The resolution made no reference to anything else. The resolution represented the action of the corporation and there was no evidence that it did not correctly reflect the corporate action. If we concede that the corporation had knowledge of the agreement among its stockholders and relied upon that agreement in declaring the cash dividend, it does not alter the situation. If the stockholders had not desired to take stock, the corporation could not have relied on the agreement to compel them to do so. It seems to us that under the facts the stockholders had an option to take and retain the cash or to purchase stock with it.

In our opinion, the facts in the case of *United States* v. *Mellon*, 281 Fed. 645, and *United States* v. *Davison*, 1 Fed. (2d) 465, are distinguishable from the facts in this case, and hence the decisions of the courts in those cases are not determinative of the issue here. Based on the facts in the instant proceeding, we are of opinion that the dividend in question was a cash dividend.

*Judgment will be entered for the Commissioner.*

PHILLIPS, dissenting: On December 1, 1917, resolutions were duly adopted by the directors and by the stockholders of the Merchants Bakery, Inc., increasing the capital stock from $65,000 to $100,000, the additional stock to be offered to stockholders at par. Subsequently the stockholders, who were also the directors, agreed that they would subscribe for all of such stock, payment to be made from a dividend to be declared by the corporation. On December 24, 1917, the directors declared a dividend of $60 per share, a total of $39,000.· At the same meeting at which the dividend was declared the stockholders delivered to the treasurer of the company their checks aggregating $35,000. None of the stockholders had funds on deposit sufficent to pay such checks, and it was agreed that they should be deposited for collection at the same time the corporation deposited the dividend checks. On January 2, 1918, the treasurer of the company deposited the dividend checks to the credit of the stockholders. These checks totaled $39,000. At that time the company had only $10,600 cash on hand or on deposit, but at the same time the treasurer deposited to the credit of the company the checks of the stockholders for $35,000, the checks serving to offset each other, except as to $4,000 admittedly paid as a dividend.

In my opinion this appeal falls squarely within the decision of the Circuit Court of Appeals in *United States* v. *Mellon*, 281 Fed. 645; 2 Am. Fed. Tax Rep. 1726, and the decision of this Board in *Appeal of Theresa Zellerbach*, 2 B. T. A. 1076. While in form a cash dividend, it is apparent that the company was in no position to pay such a dividend, and that the stockholders did not at any time expect to receive any cash dividend, other than $4,000. Except as to such $4,000, there was never any distribution of the corporation's assets among its stockholders, and at the close of the transaction the stockholders had nothing more than at the beginning.

It is said that the stockholders had the right to take cash and either retain it or use it to purchase stock. If this is so, there can be no doubt the dividend was taxable, but this is not my understanding of the situation. Before any dividend was declared all of the stockholders had agreed that stock and not cash was to be taken. These stockholders were also the directors. Furthermore, at the same meeting of the directors at which the dividend was declared, checks were delivered to the treasurer for the stock and he was authorized to deposit the dividend checks in such manner that the stockholders' checks would be paid from the dividend checks. To say that in such circumstances the stockholders had the right to receive their dividends in cash, or that the agreement was not binding because it was not made with the corporation, would seem to be to mistake the facts. The agreement was not only recognized at the

directors' meeting at which the dividend was declared, but was carried out at that same meeting by the delivery of checks to the treasurer, such checks to be collected from the dividend checks. All of the parties recognized the existence of such an agreement and acted upon it, and it is not within the authority of the taxing power, a third party, to disregard an agreement which the parties have so recognized.

It is unnecessary to determine whether a corporation is bound by an agreement made by all of its stockholders who are also all of its directors. Nor need we determine whether the corporation could ratify and enforce a contract made between others for its benefit. In the instant appeal the declaration of the dividend and the subscription for the stock were all part of the same transaction to which both the corporation and the stockholders were parties.

While the transaction took the form of the declaration of a dividend and an exchange of checks, there never was any right upon the part of this taxpayer at any time to receive such dividends in cash, and no tax liability accrued. *Eisner* v. *Macomber*, 252 U. S. 189. For the reasons stated I can not agree with the result which has been reached.

SMITH concurs.