234

AMY H. CRELLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD W. CRELLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT. ·

WILLIAM H. JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5766–5768. Promulgated May 31, 1928.

*H. Maurice Darling, Esq.,* for the petitioners.
*George G. Witter, Esq.,* for the respondent.

238

OPINION.

MARQUETTE: These three proceedings are identical as to the facts and the issue involved. The issue is whether certain distributions declared and made by the Des Moines Company and the Pittsburgh Company are taxable dividends or stock dividends. The distributions in question are (1) that of the Des Moines Company declared on January 22, 1917; (2) that of the Pittsburgh Company declared on January 29, 1917; and (3) and (4) those of both companies declared on August 27, 1917. The petitioners contend that the distributions were stock dividends. This contention is controverted by the respondent.

It may be stated at the threshold of this inquiry that the four dividends, in so far as they were paid to the stockholders of the two companies other than the Crellins and the Jacksons, were taxable, regardless of the fact that some of the stockholders may have exchanged their dividend checks for stock. They were given the option of either cashing their checks or exchanging them for stock, and that fact is of itself sufficient to render them taxable and not stock dividends. *Eisner* v. *Macomber*, 252 U. S. 189. It is therefore necessary to consider these dividends only in so far as they were paid to the petitioners and their families. For convenience we will first consider the two dividends of the Des Moines Company.

In the case of *Towne* v. *Eisner*, 245 U. S. 418, the court, in pointing out some of the essential characteristics of a stock dividend, said, through Mr. Justice Holmes:

* * * A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. * * * The proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of the new ones.

The language just quoted was repeated, with approval, by the Supreme Court in *Eisner* v. *Macomber*, *supra*.

We are of the opinion, for the reasons hereinafter stated, that the dividends declared by the Des Moines Company do not conform to the requirement of a stock dividend just pointed out, and that it is unnecessary to determine whether they possess the other characteristics of a stock dividend. The declarations of dividends in January and in August were followed by the issuance of dividend checks. The petitioners in each instance endorsed the checks and returned them to the company. The Des Moines Company thereupon credited upon its books the amount of these checks to the Pittsburgh Company. Subsequently, the Pittsburgh Company is-

sued its own stock to the petitioners to absorb these credits. That this constituted a stock dividend by the Des Moines Company, as the petitioners contend, we can not agree, in the light of what the Supreme Court has stated in *Towne* v. *Eisner*, *supra*, and *Eisner* v. *Macomber*, *supra*. Upon the issuance of dividend checks and the transfer of the amount thereof to the Pittsburgh Company, the assets of the Des Moines Company were diminished by the amount of the checks and the assets of the Pittsburgh Company were increased by the same amount. The dividends had become fully separated and segregated from the assets of the Des Moines Company, and the stock which the petitioners received did not represent any interests in the property of that company.

It is argued, however, by the petitioners that the Des Moines Company and the Pittsburgh Company were affiliated corporations, constituting in fact a single economic unit, and that the dividends in question were stock dividends notwithstanding the fact that they were paid to the petitioners in stock of the Pittsburgh Company. This contention is, we think, fallacious. The provisions of the several revenue acts providing for the filing of consolidated returns by affiliated corporations, that is, by two or more corporations where certain conditions exist in regard to the ownership or control of their capital stock, lay down a rule of taxation and not a rule of property. Assuming, but not deciding, that the Des Moines Company and the Pittsburgh Company were affiliated within the purview of the Revenue Act of 1917 and entitled to file a consolidated return of income and invested capital, they were, nevertheless, two separate, distinct legal entities, organized in different jurisdictions, with different laws governing their existence. Each owned its own property, separate and apart from the other, just as fully and completely as if they were not affiliated for purposes of taxation, and neither held any of the capital stock of, or had or exercised any dominion or control over the other. The fact that the majority of the capital stock of each corporation was held by the same individuals and that the same persons held identical offices in each company, does not change the situation. The two corporations were, nevertheless, separate legal entities and neither one had any right in or title to the property of the other. We are of the opinion that the two dividends declared and paid by the Des Moines Company were cash dividends or dividends paid in stock of the Pittsburgh Company, and in either case they resulted in taxable income to the petitioners. *Peabody* v. *Eisner*, 247 U. S. 347.

The circumstances surrounding the two dividends of the Pittsburgh Company differ from those pertaining to the dividends of the Des Moines Company, in that the dividend checks issued to the Crellins and the Jacksons by the Pittsburgh Company were

endorsed back to that company, which issued its stock to Crellin and Jackson in approximately the full amount of the checks. However, the dividends were, in our opinion, taxable to the petitioners.

The resolutions declaring the dividends were in the ordinary form for declaring cash dividends and there is nothing therein to indicate that they were intended to be paid in stock. On the contrary, as we have pointed out above, the stockholders, other than the Crellins and the Jacksons, had at all times the option of cashing their dividend checks or exchanging them for stock, and as to these stockholders, the dividends were clearly taxable. As to Crellin and Jackson it appears that they endorsed back their checks to the corporation and were later issued stock because they had agreed between themselves that they would do so and thus keep their interests in the corporation equal. This was their voluntary contract to which the corporation was not a party, and for the reasons hereinafter set forth, it could not convert into a stock dividend what would otherwise be a taxable dividend. Furthermore, it may be noted that these dividends also lacked one of the essential characteristics of a stock dividend pointed out in *Towne* v. *Eisner*, and *Eisner* v. *Macomber*, *supra*, namely that in a true stock dividend "the proportional interest of each shareholder remains the same." After each of the dividends under consideration, the proportionate interests of the stockholders of the Pittsburgh Company were materially changed, the interests of the Jacksons and the Crellins being increased, and the interests of the other stockholders being diminished.

The situation here presented is in many respects similar to that found in *W. J. Hunt*, 5 B. T. A. 356, wherein we discussed at length the question of stock dividends. The facts in that case were as follows:

On December 1, 1917, the board of directors of the Merchants Bakery, Inc., adopted a resolution recommending to the stockholders that the capital stock of the corporation be increased from $65,000 to $100,000, and that the additional issue of $35,000 of capital stock be offered to the stockholders at par in proportion to their respective holdings. At a special meeting of the stockholders of the corporation called on December 1, 1917, the recommendation of the board of directors submitted on the same date was by resolution adopted by the stockholders, and the capital stock was increased to $100,000 in accordance with the recommendation made by the board of directors. On December 24, 1917, at a meeting of the board of directors of the corporation, the following resolution was adopted:

* * * Resolved: that the business of the company showed that its operation had been so prosperous in the year 1917 as to justify the payment of an

extra dividend. Now, Therefore, Be it resolved that an extra dividend of $60 per share is hereby declared payable on the stock outstanding as of January 1, 1917.

Subsequent to the adoption of the resolution by the board of directors and the stockholders at the meetings held on December 1, 1917, but prior to the declaration of the dividend on December 24, 1917, it was agreed by all of the stockholders, including those who were members of the board of directors, that they would take stock and pay for it with the money distributed by the corporation to the extent of $35,000, and that checks received from the corporation should be deposited to the credit of the individual stockholders, whose checks in payment for stock would be simultaneously deposited. At the meeting of the board of directors on December 24, 1917, the stockholders delivered to the treasurer of the corporation their personal checks aggregating $35,000. These checks were given in payment for stock but were not to be presented for payment until the corporation's checks representing the pro rata share of the dividend due each stockholder were deposited. Some of the stockholders who signed and delivered checks to the corporation had no money in the banks upon which they were drawn; others were for amounts in excess of the respective balances of the personal bank accounts of the makers, and by agreement they were held by the corporation until January 2, 1918, when the checks of the corporation were made out in favor of all the stockholders in amounts aggregating $39,000. The treasurer of the corporation deposited the checks issued to the stockholders in the bank to the personal credit of the stockholders and simultaneously deposited to the credit of the corporation the checks given it by the stockholders. When the dividend was declared the corporation had a surplus in excess of $39,000, but actually had only $10,600 in cash when the dividend checks were issued. In holding that the dividend was a cash dividend and not a stock dividend, we said in part:

` The taxpayer relies in support of his contention upon the cases of *United States* v. *Mellon*, 281 Fed. 645; *United States* v. *Davison*, 1 Fed. (2d) 465; and *Appeal of Theresa Zellerbach*, 2 B. T. A. 1076.

Whether, in any case, a dividend is a stock or cash dividend is a question of fact and the question must be decided upon the peculiar facts in each case. While the Board will look through form to substance in order to arrive at what actually occurred, it is sometimes difficult to determine what is mere form and what is in fact substance. The form which a transaction takes frequently determines what the transaction is.

\*    ·  \*    \*    \*    \*    \*    \*

In this case, however, there was a segregation of the profits of the corporation. The corporation issued its check to the stockholders for their proportionate share of the corporate earnings. Each stockholder endorsed the check and turned it back to an officer of the corporation who deposited to the stockholder's credit, whereupon the checks given by the stockholders for stock were presented

and paid. The fact that the stockholders, in accordance with an agreement entered into among themselves, purchased stock from the corporation with a portion of the money received, is to our mind not controlling. It does not mean that the stockholder did not receive from the corporation his proportionate part of the earnings. His proportionate part of the profits of the corporation became separated from the corporate funds and in every substantial sense of the word was income derived and separated from capital. What a stockholder does with his part of the earnings of the corporation when these earnings have become separated from corporate funds and become the property of the stockholder, seems to us to be not material in the consideration of the case.

\* \* \* \* \* \* \*

It was urged by the petitioner that he and all the other stockholders had an oral agreement to the effect that they would take the dividend in cash but would apply it on the purchase of new stock. It does not appear, however, that this was the action of the corporation or that any such agreement was entered into by the corporation. Without such an agreement on the part of the corporation itself, the stockholders were not legally bound to subscribe for the new stock, nor were they under any legal duty to apply the checks in payment for new stock. The agreement among the stockholders can not alter the action of the corporation in declaring a cash dividend. Agreements made by stockholders as such are not to be treated as the contract of the corporation unless the corporation formally ratifies or adopts them. *De La Vergne Co.* v. *German Savings Institution*, 175 U. S. 40; *Moore & Handley Hardware Co.* v. *Towers Hardware Co.*, 87 Ala. 206; 6 So. 41.

By the overwhelming weight of authority, when the power to do particular acts or general authority to manage the affairs of the corporation is vested in the directors or trustees, it is vested in them not as individuals, but as a board, and as a general rule they can act so as to bind the corporation, assuming that there is no ratification or estoppel, only when they act as a board and at a legal meeting. *Kansas City Hay-Press Co.* v. *Devol*, 72 Fed. 717; *Ames* v. *Goldfield Merger Mines Co.*, 227 Fed. 292.

The members of the governing body of a corporation are agents of the corporation only as a board and not individually. Hence, it follows that they have no authority to act save when assembled at a board meeting. The separate action individually of the persons composing such governing body is not the action of the constituted body of men clothed with corporate power. *Commercial Brewing Co.* v. *McCormick*, 225 Mass. 504; 114 N. E. 812; *Citizens' Securities Co.* v. *Hammel*, 14 Cal. App. 564; 112 Pac. 731.

In this case, even if it be conceded that the individual members of the board of directors could have legally bound the corporation, it is not alleged by any witness that the agreement referred to was other than an agreement between the stockholders, those who were to receive the dividends, and it related to what they would do with their dividends and not to the manner in which the corporation would distribute their dividends. There is no evidence that the directors as such undertook to act for the corporation. The resolution declaring the dividend did not recognize any such agreement as having been made. It is true that the corporation may have acted and very likely did act upon the assumption that the stockholders, in accordance with the agreement among themselves, would purchase stock with their dividends, but this is not sufficient to change what was declared by the corporation to be a cash dividend to a stock dividend. The stockholders were not legally bound to take stock.

\* \* \* \* \* \* \*

The dividend which was declared in this case, according to the resolution by which it was declared, was a cash dividend. The fact that the recipients of

that dividend agreed to apply it to the purchase of stock is not sufficient to change the nature of the transaction. It is not material what the recipients of the dividend agreed to do with it when it was received. A violation of the agreement of the stockholders to purchase stock with that dividend would not have given the corporation a right to sue for the application of that money to the purchase of stock.

\* \* \* \* \* \* \*

When the dividend in this case was declared it took the form of a cash dividend. The resolution made no reference to anything else. The resolution represented the action of the corporation and there was no evidence that it did not correctly reflect the corporate action. If we concede that the corporation had knowledge of the agreement among its stockholders and relied upon that agreement in declaring the cash dividend, it does not alter the situation. If the stockholders had not desired to take stock, the corporation could not have relied upon the agreement to compel them to do so. It seems to us that under the facts the stockholders had an option to take and retain the cash or to purchase stock with it.

The petitioners rely on the cases of *United States* v. *Mellon*, 279 Fed. 910, affd. 281 Fed. 645; *United States* v. *Davison*, 1 Fed. (2d) 465, affd. 9 Fed. (2d) 1022; *Weiss* v. *Stearn*, 265 U. S. 242; and *Theresa Zellerbach*, 2 B. T. A. 1076. However, the facts in these cases are easily distinguishable from the facts in the instant case and hence the decisions therein are not decisive of the issue here.

Counsel for the petitioners also strenuously urged in support of their contention that when the dividends under consideration were declared the corporations did not have sufficient cash to pay them. We attach no great weight to that fact. As we said in *Eugene E. Paul*, 2 B. T. A. 150:

\* \* \* We do not regard the fact that the corporation had insufficient cash on hand to pay the dividend as of controlling importance. It had a surplus in excess of the dividend declared, and the indebtedness to its stockholders existed irrespective of that fact. The right to declare a dividend from surplus profits was exercised by the directors and it became their duty to provide ways and means to make payment thereof. If surplus profits have in fact been earned and are invested in property used in the business of a corporation, a dividend may properly be paid by borrowing money. \* \* \*

We are of the opinion that the two dividends paid by the Pittsburgh Company were cash dividends and taxable to the recipients.

The petitioners introduced no evidence in support of their other assignment of error, and on the pleadings that issue must be decided in favor of the respondent.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

MILLIKEN, dissenting: I can not concur in the entire opinion, for it seems to me that, as to some of the dividends, the decisions of the United States Circuit Court of Appeals for the Third Circuit (the

circuit in which these petitioners reside), in *United States* v. *Mellon*, 281 Fed. 645, and *United States* v. *Davison*, 9 Fed. (2d) 1022, are contrary to the decision here made.

TRUSSELL agrees with the dissent.