J. E. BRADING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29815. Promulgated September 24, 1929.

*R. R. Miller, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

LITTLETON: The question is whether a dividend of January 7, 1922, was a stock dividend and, therefore, nontaxable, as opposed

to the determination of the Commissioner that this was a cash dividend. While the testimony of three of the four stockholders was that they understood this to be a stock dividend, we can not regard their understanding as conclusive of the issue before us, but must arrive at our answer by a consideration of the entire record as presented as to this situation.

When we come to examine the facts with respect to the issuance of the stock and the declaration of the dividend, we are not satisfied that this was, in fact, a stock dividend. The resolution itself, under which the stock was issued, did not make it mandatory upon the board of directors to have the stock paid for in dividends, but merely provided that the indebtedness on account of the stock subscription would be liquidated " by dividends now due and hereafter to become due, or in such manner as the Board may hereafter direct." This certainly gave authority to the board of directors under which it may have required payment other than from dividends subsequently declared, though as opposed to this we have the fact that there was an oral understanding or agreement among the stockholders that they would not be required to make any payments on these subscriptions other than through the liquidation to be effected by the declaration of dividends by the corporation. While knowledge of this agreement might be imputed to the corporation because of the necessary relationship existing between the four individuals who were the stockholders of the corporation and the corporation itself, there is nothing to indicate that any action was taken by the corporation as such, other than as shown in the minutes referred to above, and, in any event, as we said in *Amy H. Crellin et al.*, 12 B. T. A. 234, " This was their voluntary contract to which the corporation was not a party, and * * * it could not convert into a stock dividend what would otherwise be a taxable dividend." Similarly as to any connection between the stock subscriptions then outstanding on account of the additional issue of stock and the dividend then declared, the resolution merely providing that " $20,000 be taken from the surplus fund and applied to the payment of a 25% dividend to all stockholders of record as of January 1, 1922." The further fact exists that at the time the additional issue of stock was proposed, the corporation had a surplus of $27,000, and it was contemplated that the stock issue would be taken care of from this surplus and a deal with one of the stockholders, whereby certain real estate was to be acquired by the corporation and appreciated in value, but the real estate transaction was not consummated and no dividend declaration was made until eighteen months later, when earnings for 1921 in the amount of $17,310.97 were transferred to the surplus account and a dividend of $20,000 declared.

In view of the foregoing facts, we are unable to say that this was a stock dividend rather than a cash dividend as determined by the Commissioner. It is unquestionably settled by *Eisner* v. *Macomber*, 252 U. S. 189, that stock dividends do not constitute income within the meaning of the Sixteenth Amendment, but it is also true that in making that decision the court was careful to state that they were considering "the taxability of *bona fide* stock dividends only," and there existed a large surplus from which the stock dividend distribution was being made. Mr. Justice Brandeis, in a dissenting opinion in the *Macomber* case, stated:

It is conceded that if the stock dividend paid to Mrs. Macomber had been made by the more complicated method pursued by the Standard Oil Company of Kentucky; that is, issuing rights to take new stock *pro rata* and paying to each stockholder simultaneously a dividend in cash sufficient in amount to enable him to pay for this *pro rata* of new stock to be purchased—the dividend so paid to him would have been taxable as income, whether he retained the cash or whether he returned it to the corporation in payment for his *pro rata* of new stock. * * *

The illustration given above of a taxable dividend is somewhat the situation we had in *W. J. Hunt*, 5 B. T. A. 356, where, after an increase in capital stock, the stockholders gave their checks to the corporation in payment for the stock, though at the time it was understood that the checks would not be presented for payment until after the declaration of a dividend. One week later, when the dividend was declared, the corporation likewise gave its checks to the stockholders for the amounts to which each was entitled and the checks of the stockholders, together with those of the corporation, were presented to the bank simultaneously. Neither the corporation nor the stockholders had sufficient money in bank to meet the checks independent of the other checks then being issued. In holding that this amounted to a cash dividend, the Board said:

When the dividend in this case was declared it took the form of a cash dividend. The resolution made no reference to anything else. The resolution represented the action of the corporation and there was no evidence that it did not correctly reflect the corporate action. If we concede that the corporation had knowledge of the agreement among its stockholders and relied upon that agreement in declaring the cash dividend, it does not alter the situation. If the stockholders had not desired to take stock, the corporation could not have relied on the agreement to compel them to do so. It seems to us that under the facts the stockholders had an option to take and retain the cash or to purchase stock with it.

We are unable to distinguish the aforementioned supposititious case of Mr. Justice Brandeis in the *Macomber* case and the facts in the *Hunt* case from that before us. It is true that here no checks were issued by either the corporation or the stockholders, but since

the dividends after declaration are a liability of the corporation to the stockholders and in effect represent a separation of the amount thereof from the surplus account, we do not regard it as material that the stockholders permitted this segregated surplus to be used in satisfaction of their liability to the corporation without the issuance of checks by either party. In effect, the dividends were constructively received by the stockholders and constructively paid by them to the corporation. The manner in which it was done went to form rather than substance, and it is substance, the essence of the thing done, which is determinative of our action. *Eisner* v. *Macomber, supra.*

The case of *United States* v. *Mellon*, 281 Fed. 645, and *United States* v. *Davison*, 9 Fed. (2d) 1022, are, of course, distinguishable from the case at bar in that those cases involved a situation where the stockholders whom it was sought to tax, had, in fact, paid new money into the corporation in the acquisition of stock and other stock was at the same time issued to them as an outright stock dividend. The character of transaction involved is stated by the court in the *Mellon* case as follows:

It will thus be seen that the whole transaction was a means, not of paying out money to shareholders, for the company had none to pay out, but was a means of obtaining from the shareholders the paying in of new money which the company needed to meet its existing indebtedness and provide it with proper working capital; and, so far as any cash was paid to stockholders, W. L. Mellon, the defendant, had bound himself by agreement not to receive any, but, on the contrary, to pay additional cash into the company, and such payments as were made to the smaller stockholders were simply an equitable and fair way of allowing those who did not desire to put further money into the company to get the value of their stock, not from the corporation itself, but through the medium of the underwritten money furnished by T. Mellon & Sons, who in effect took their place and paid the needed money into the company.

In the case before us the stockholders constructively received funds which they had not theretofore had and this was constructively used to acquire new stock of the corporation.

. Nor is the situation here analogous to that in *Theresa Zellerbach et al*, 2 B. T. A. 1076, since there we were dealing with a disguised dividend and one that was plainly conceived and carried out as a stock dividend. At the time of its declaration, stock dividends were considered taxable in the same manner as those paid in cash, and it was only because of adverse and unfavorable comment which resulted from the declaration of a stock dividend shortly prior thereto that the dividend appeared on the surface other than what it in fact was.

With respect to the case of *W. Q. Wright*, 10 B. T. A. 806, on which the petitioner relies and in which we held that the effect of the

transaction was the declaration of a stock dividend, that case involved a situation where the increase in the capital stock and the dividend distribution were for the purpose of distributing to the stockholders an amount of stock equal to an excess value attaching to the property at the date of the increase in the capital stock. The character of transaction involved is stated by the Board in its opinion as follows:

As set out in the minutes of the meeting of the board of directors held on March 29, 1919, the amount invested in the company by the stockholders was approximately $252,500 and the value of the property owned by the company was $500,000, and it was to capitalize the difference of $247,500 that the capital structure was increased. It was thought that the amount of $270,000 carried on the books as "assessment reserve" was not immediately available as surplus, and that during the interim until the payment of the bonds it was necessary to have the notes. It was understood, however, that the makers of the notes were not to pay the same. They were regarded as purely a "pro forma matter" pending the redemption of the bonds. The increase in capital stock was charged to surplus to the extent that it was thought available when the stock was increased. The remainder was charged to "bills receivable," it being understood by the stockholders that as the surplus became available, surplus would be charged and bills receivable credited until the entire increase in capital stock had been charged to surplus. * * *

But in the case now before us, there is no showing of any such condition. It is true that at the date of the increase in capital stock, the corporation had a surplus of some $27,000, whereas the stock issued was $40,000, but it further appears that the first dividend declared, following the increase in capital stock, was eighteen months thereafter when it was determined that the earnings for the prior year were equal to more than 85 per cent of the dividend of $20,000 then being declared. And as we said in *Charles Watson Hull*, 13 B. T. A. 299, " Stock dividends are not charges against future earnings, but against surplus already accumulated."

In view of the foregoing, and upon a consideration of the entire record, we are not satisfied that it has been shown that the dividend in question answers the requirements of a stock dividend as laid down in *Eisner* v. *Macomber, supra*, which would make it nontaxable.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MURDOCK dissents.

---

TRAMMELL, dissenting: The question is whether the petitioner's proportionate part of the dividend declared by the corporation in 1922 was a cash dividend or a stock dividend. It is true that the stock had already been issued in 1920, but it was issued pursuant to and in accordance with an understanding previously had that it was to be paid for by the stockholders out of dividends to be declared by

442

the corporation out of earned surplus existing or out of dividends to be declared out of subsequent earnings. The dividends here involved were declared out of subsequent earnings. I see no difference in principle between a case where the stock had already been issued and was to be paid for out of future dividends and a situation where there is a definite agreement and understanding that stock is to be issued for dividends declared. The real question to be determined is whether the stockholders actually received anything by way of earnings from the corporation which became separated from their capital. The stockholders, when the dividends were declared, had no option either to receive cash or stock. They had already received stock and under the prearranged plan were not actually to receive cash, but the dividends were to be and were merely applied on the stock subscription. They could be used for no other purpose. I think, under the circumstances, that such dividend was in effect no more than a stock dividend and is not taxable. Following the principles of the cases of *United States* v. *Mellon*, 281 Fed. 645, and *United States* v. *Davison*, 9 Fed. (2d) 1022, wherein certiorari was denied by the Supreme Court, I can reach no other conclusion.