TILLOTSON MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44167. Promulgated March 11, 1933.

*William D. Bonthron, C. P. A.*, for the petitioner.
*C. R. Marshall, Esq.*, for the respondent.

### OPINION.

STERNHAGEN: The respondent determined a deficiency of $16,187.20 in petitioner's income tax for 1926, by treating as a stock dividend the distribution in 1926 to petitioner, a preferred shareholder in the Willys-Overland Company, of some of that corporation's common shares, with consequent reduction of cost as the basis of gain on subsequent sale in 1926 of the original shares. A stipulation and

accompanying exhibits contain the facts upon which the case was submitted.

The petitioner, an Ohio corporation, acquired from time to time between November 1, 1922, and December 31, 1924, 6,500 shares of the 7 per cent cumulative preferred stock of the Willys-Overland Company, having a par value of $100 a share, which it owned on December 2, 1925, and January 2, 1926. The aggregate cost of these shares was $418,575. No dividends had been declared or paid on such preferred stock from July 1, 1921, to September 30, 1925, and the accumulation for such period was $29.75 a share, which amounted to $193,375 upon petitioner's 6,500 shares.

The holders of preferred shares had the right to a cumulative dividend of 7 per cent per annum, payable quarterly, " out of the surplus profits of the company for each year in preference to all other stockholders."

Paragraph A I of the articles of incorporation provided:

Out of the surplus profits arising from the business of the Company, the holders of the preferred stock are entitled to receive dividends as aforesaid at the rate of seven per cent. per annum, and no more, payable quarterly on the first day of January, April, July and October in each year, before any dividends shall be declared, set aside or paid upon the common stock, and such dividends on the preferred stock shall be cumulative as from October 1, 1912, so that if in any year or years dividends thereon at the rate of seven per cent. per annum shall not have been paid, the deficiency shall be paid before any dividends shall be paid upon or set apart for the common stock.

The preferred share certificate provided:

VII. The holders of the preferred stock shall have no right as such holders to subscribe for or to acquire from the Company any stock, either preferred or common, which the Company may from time to time issue or offer for subscription or sale.

Paragraph D of the articles of incorporation provided:

The holders of the common stock shall exclusively possess voting powers for the election of directors and for all other purposes, and the holders of the preferred stock shall have no voting power, except as above stated; provided that in case the Company shall have failed in respect of four quarterly periods to declare and pay the full regular quarterly dividend on the preferred stock, then and in every such case so long as there shall be any arrears of dividends upon the preferred stock the holders of the common stock shall have no voting power and the holders of the preferred stock shall exclusively possess voting powers for the election of directors and for all other purposes. If, however, all such accrued installments and arrears shall be paid by the Company at any time, then and thereupon all power of the preferred stockholders to vote, as in this paragraph provided, shall cease, subject, however, to being again revived upon any subsequent failure of the Company in respect of four quarterly periods to declare and pay the full dividend on the preferred stock. At all times each holder of either class of stock of the Company which shall at the time possess voting powers on any matter, shall be entitled to one vote on such matter for each share of such class of stock then standing in his name on the books of the Company, except as otherwise required by law.

On December 2, 1925, the directors of the Willys-Overland Company adopted the following:

Whereas surplus profits of this Company, The Willy-Overland Company, in excess of the dividend hereinafter declared have been from time to time invested in extensions and betterments to the plant and property of the Company, and in providing additional facilities for its business, and in that manner a large addition has been made to the value of the assets of the Company but which is not available for the declaration and payment therefrom of a cash dividend, though same at a fair valuation is in excess of the dividend hereinafter declared, and

Whereas this Company has on hand a large amount of cash assets and inventory which it is now deemed advisable to conserve for the legitimate business requirements of the Company; and

Whereas it is deemed advisable by the Board of Directors to declare a dividend on the outstanding preferred stock of the Company payable in unissued common stock as hereinafter set forth;

Now, Therefore, Be it Resolved, that 262,389 shares of the unissued Common Stock of this Company be and hereby are appropriated by the Board of Directors for the purpose of paying the dividend hereinafter declared on the preferred stock of the Company; and,

Now, Therefore, Be it Resolved, that from the surplus profits of this Company, a dividend of Twenty-nine Dollars and Seventy-five cents ($29.75) on each share of the present issued and outstanding preferred stock of this Company be and is hereby declared, payable on the 2nd day of January, 1926, to preferred stockholders of record, at the close of business on the 19th day of December, 1925, in the common capital stock of this Company to be taken at the price of Twenty-five ($25.00) Dollars per share, * * * ; that the dividend hereby declared shall be and is for the quarterly dividends now in arrears and unpaid, being those quarterly dividends beginning with the one payable October 1, 1921, for the quarter ending September 30, 1921, and ending with and including the one payable October 1, 1925, for the quarter ending September 30, 1925; * * *

Pursuant thereto petitioner, on January 2, 1926, received 7,735 shares of such no-par common stock, the market value of which on that date was 31⅜ a share, aggregating $242,685.53. The " declared value " [sic] was $5 a share and the book value $13.51.

Some of the preferred shareholders insisted upon and received the $29.75 dividend in cash.

The market value of the preferred stock on January 2, 1926, was $93 a share, or $604,500 for petitioner's 6,500 shares.

On February 8, 1926, petitioner sold its 6,500 shares of preferred stock for $599,906.67.

Petitioner treated the receipt of 7,735 common shares as an ordinary property dividend, and in its 1926 return it included the value of $242,685.63 with other dividends in its gross income and in its deductions [see Revenue Act of 1926, section 234 (a) (6)]. It also reported on said return a profit of $181,331.67 from the sale of the preferred shares, based on their original cost of $418,575.

The respondent treated the receipt of 7,735 common shares as a stock dividend, and apportioned the original cost of $418,575 among the old preferred and the new common in the ratio that the total market value on January 2, 1926, of each bore to the combined total market value of both, resulting in an assigned cost of $298,669.81 to the preferred shares. This figure he used as the basis for determining a gain of $301,236.86 upon the sale. By thus increasing the profit, he determined the deficiency.

There is no doubt that if the dividend of common shares to preferred shareholders was such a stock dividend as was not subject to tax (Revenue Act of 1926, section 201 (f)), the Commissioner's method of using it to reduce the basis for determining gain or loss upon sale of the original preferred shares is correct. *George T. Smith*, 21 B. T. A. 782. For the characteristic which gives it immunity from tax, not alone under the statute, *Towne* v. *Eisner*, 245 U. S. 418, but also under the Constitution so long as the income tax is unapportioned, *Eisner* v. *Macomber*, 252 U. S. 189, is that it represents nothing new or different from the original investment but only a further subdivision of its tokens. So much the taxpayer would admit, if it agreed that this was such a stock dividend. But it insists that the dividend was not inherently free from tax as a stock dividend, since it lacked the very characteristics and effects which give substance to the exemption. While to this corporate petitioner the dividend is tax free, whether it be a stock dividend or not, it is nevertheless of primary importance to determine whether the immunity is found in the exemption of section 201 (f) or the deduction of section 234 (a) (6), because the effect in tax when the stock thus received is disposed of is different, a stock dividend dividing the basis and an ordinary dividend, whether in cash or property, leaving the basis unaffected.

Any idea that the distribution of the common shares to the preferred shareholders was in discharge of a debt must be dismissed. Cumulative preferred dividends do not become a debt of the corporation until they have been properly declared. Before that there is a right to preference, but this is not a chose in action. When the dividend is declared it is still a dividend. So the taxpayer's former concession that the difference between the $29.75 cumulative dividends regarded as a debt and the $31.375 value of the share when received was taxable profit would not stand against it. But the concession was withdrawn by an amended pleading, and the respondent not only seeks nothing from it but opposes the view that there was a liquidation of debt. We pass to the essential question.

Whether there has been a tax-free stock dividend is to be determined not by the terms used but by an analysis of the legal effect

of what was done in the name of a stock dividend. Not every dividend in stock is a stock dividend, *Peabody* v. *Eisner*, 247 U. S. 347; *United States* v. *Phellis*, 257 U. S. 156, nor is every stock dividend a dividend in stock, *Harry A. Brown*, 26 B. T. A. 901; cf. *W. Q. Wright*, 10 B. T. A. 806. Indeed a dividend declared in cash has been held to be in substance a tax-free stock dividend. *United States* v. *Mellon*, 279 Fed. 910; 281 Fed. 645; *United States* v. *Davison*, 1 Fed. (2d) 465; 9 Fed. (2d) 1022; *Irving Trust Co.* v. *United States*, 44 Fed. (2d) 246; cf. *W. J. Hunt*, 5 B. T. A. 356; *George T. Smith*, 21 B. T. A. 782. The tax exemption is also applicable to stock rights, *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247. While this does not apply to a dividend in debenture bonds from surplus, *Doerschuck* v. *United States*, 274 Fed. 739, a distribution of rights to convertible bonds has recently been held to produce no income, *T. I. Hare Powel*, 27 B. T. A. 55.

Analyzing the facts in this proceeding in the manner prescribed in *Eisner* v. *Macomber*, *supra*, the want of essential similarity is immediately apparent. This was not a proportional redistribution of existing or inchoate rights. There was a substantial change in the shareholder interests not only of this petitioner but of all other shareholders as well. Whether the adventitious effect of this at any given time to any one shareholder be for better or worse may serve to measure the gain or loss, but it leaves the change no less substantial. This petitioner as a preferred shareholder not only enjoyed the benefits of its preference and the assurance which the provision for cumulative dividends might give, but it also was subject to the limitations of a fixed dividend and a contingent right to vote. By this dividend, it acquired new and separate rights of a common shareholder to participate in unlimited dividends and liquidations and unqualifiedly in the shareholders' meetings.

While this did not take anything from the corporation nor anything directly from the other common shareholders except a proportionate part of the value of their shares, it is the petitioner's situation which is now being considered and the effect of the dividend upon its income alone. *United States* v. *Phellis*, 257 U. S. 156. There need be no mutuality in the effect of such a dividend upon the several taxpayers who may be in one way or another affected by it. Some attempt is made by the petitioner to show a significant change in the corporation's accounts. But this arises from the discrepancies between the book value, the adopted dividend value and the par value of the shares, and they do not control the character of the transaction, whatever the corporation may have voluntarily entered upon its books and records.

Although much is said in the opinion in *Eisner* v. *Macomber*, *supra*, about a stock dividend taking nothing from the corporation

and being the opposite of a distribution of earnings, it seems to us a perversion of the esssential reasoning of that opinion to regard this as the more important of the considerations. The case presented the question whether the plaintiff could constitutionally be subjected to the income tax in respect of a pure proportional common stock dividend. The primary concern was to ascertain what such dividend brought to her and whether it could be said to be income. This question was thoroughly explored, and finding that the shareholder received nothing of substance and that the corporation parted with nothing but only modified its accounts, the conclusion was drawn that she had derived no income. With a simple stock dividend, both propositions support the conclusion; but it is a plain fallacy to give them equal weight, or to infer that the effect upon the corporation would alone have induced the result reached if the effect upon the shareholder had been to give her additional rights so separate and substantial as to afford different prospects, yield different fruit, and be salable with different market considerations from those formerly existing as to her. Cf. *Marr* v. *United States*, 268 U. S. 536. As between the claims of life tenant and remainderman, the latter could hardly deny that such a dividend as that now before us was an accession which could be given to the life tenant without impairing the remainderman's interest. For to him would still be preserved the same rights and possibilities which the preferred shares represented, notwithstanding the corporation's manner of liquidating the cumulative dividend by the distribution of common shares which represented subordinate rights.

When it is realized that the occasion for the original prototype of section 201 (f), namely, section 201 (d) of the Revenue Act of 1921, exempting stock dividends from tax, was the decision of the Supreme Court in *Eisner* v. *Macomber, supra,* annulling so much of section 2 (a) of the Revenue Act of 1916 as included stock dividends among those taxable, it becomes clear that the subsequent statutory exemption was only as broad as the decision, and hence that the intention was not to exempt stock dividends by any general or loose concept but only such as could not constitutionally be taxed because they were not income. The term " stock dividend " is not of itself so free from ambiguity as to preclude construction, and hence the statutory exemption must be construed to promote the intendment disclosed by the history and circumstances of its enactment. This requires that it be confined to such as have the attributes which distinguished them from the receipt of income by the shareholder. Only those which place the shareholder in no essentially different position are exempt.

The respondent erred in treating the petitioner's receipt of the common shares as if it were a nontaxable stock dividend which

operated to reduce the cost basis of the 6,500 shares of preferred. The petitioner correctly measured its profit from the sale of the 6,500 shares upon the basis of the entire original cost of such shares, $418,575.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

BLACK, dissenting: I dissent from the conclusions reached in the majority opinion. It is my view that the Commissioner has treated the transactions involved in this proceeding in accordance with the applicable statute and his regulations promulgated thereunder, and moreover that these regulations are correctly interpretative of the law. The statute which must be construed is section 201 (a), (f) of the Revenue Act of 1926, which reads:

SEC. 201. (a) The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913, * * *

    \*        \*        \*        \*        \*        \*        \*        \*

(f) A stock dividend shall not be subject to tax.

In pursuance of the foregoing statute, the Commissioner has promulgated articles 1547 and 1548 of Regulations 69, which read as follows:

ART. 1547. *Dividends paid in property.*—Dividends paid in securities or other property (*other than its own stock*) in which the earnings of a corporation have been invested, are income to the recipients to the amount of the market value of such property when receivable by the shareholders. (See, however, section 203 (g) and article 1576.) Where a corporation declares a dividend payable in stock of another corporation, setting aside the stock to be so distributed and notifying the shareholders of its action, the income arising to the recipient of such stock is its market value at the time the dividend becomes payable. (See article 52.) Scrip dividends are subject to tax in the year in which the warrants are issued. [Italics supplied.]

ART. 1548. *Stock dividends.*—The issuance of *its own stock* by a corporation as a dividend to its shareholders does not result in taxable income to such shareholders, but gain may be derived or loss sustained by the shareholders from the sale of such stock. The amount of gain derived or loss sustained from the sale of such stock, or from the sale of the stock with respect to which it is issued, shall be determined as provided in articles 1561 and 1599. [Italics supplied.]

Similar regulations are found in articles 1547 and 1548 of Regulations 62 under the 1921 Act, and articles 1547 and 1548 of Regulations 65 under the 1924 Act, and articles 627 and 628 of Regulations 74 under the 1928 Act. The substantial reenactment in later acts of the provisions theretofore construed by the Bureau is persuasive evidence of legislative approval of the regulation. *Brewster* v. *Gage*, 280 U. S. 327; *National Lead Co.* v. *United States*, 252 U. S. 140.

It seems clear to me from a reading of the foregoing regulations that the dividend distribution involved in this proceeding was a nontaxable one under the terms of these regulations. The Commissioner has consistently given such interpretation to his regulations. For example, in I. T. 2538, C. B. IX–1, p. 465, the M Company had outstanding preferred stock, the dividends on which were payable in cash or at the election of the stockholders in common stock. In December, 1929, a dividend was declared payable in cash on February 15, 1930, in respect of each share, the record holder of which on January 15, 1930, had not on or before such date filed a certificate of election to receive dividends in common stock. If a certificate of election was filed, the dividend was payable in common stock. It was held under such circumstances that the stockholders who filed certificates of election and received their dividends in common stock, received a stock dividend and therefore received no taxable income.

The error, as I see it, of the majority opinion in holding that such dividend was not a stock dividend is that it assumes that the only kind of a stock dividend exempted from taxation by section 201 (f) is such a stock dividend as was present in *Eisner* v. *Macomber*, *supra*. In that case the Standard Oil Company of California, having only one class of stock, to wit, common stock, had declared and paid out of surplus and profits an ordinary stock dividend by distributing to its several stockholders common stock of the corporation in proportion to the common stock holdings of each. The Government determined that such distribution was taxable, but the Supreme Court held to the contrary.

The fundamental question which the Supreme Court decided in that case was stated by the court in the beginning of its opinion, as follows:

This case presents the question whether by virtue of the sixteenth amendment Congress has the power to tax as income of the stockholder and without apportionment, a stock dividend made lawfully and in good faith against profits accumulated by the corporation since March 1, 1913.

It is my view that in the instant case we have before us a "stock dividend" made lawfully and in good faith against profits accumulated by the corporation since March 1, 1913, just as much as was present in *Eisner* v. *Macomber*. The only difference is that in the instant case we have no constitutional question involved because, in my view, Congress has made no attempt to tax such a dividend as we have here. True it is that the stock dividend involved in *Eisner* v. *Macomber* was the ordinary stock dividend where all stockholders were treated alike by receiving a dividend in common stock in proportion to their common stock holdings and when the dividend dis-

tribution was completed each stockholder still owned the same proportional interest in the corporation as he did before.

But that kind of a stock dividend is not the only kind that is free from tax. The Government made that kind of a contention in the following cases, but its contention was denied by the courts. *United States* v. *Mellon*, 279 Fed. 910; affd., 281 Fed. 645, and *United States* v. *Davison*, 1 Fed. (2d) 645; affd., 9 Fed. (2d) 1022; certiorari denied by the Supreme Court. More will be said about these cases later on in this dissent.

Ballentine's Law Dictionary defines a stock dividend as a "dividend payable to the stockholders of a corporation in shares of stock of the corporation, which dividend a corporation having power to increase its capital may in the absence of statute declare, and which represents earnings of the corporation invested by the board of directors in the enlargement and extension of its work or its plant or both."

The dividend in the instant case, it seems to me, fits almost exactly into the foregoing definition.

The Willys-Overland Company had certain authorized but unissued common stock. It was in arrears in dividends on its preferred stock. It had sufficient accumulated profits and surplus to pay these dividends, but such surplus and profits were not in cash. The situation was fully described in the dividend resolution of December 2, 1925, which has been quoted in the majority opinion and to which reference is hereby made. The distribution which it made to its preferred stockholders in pursuance of said resolution was not in cash or other property belonging to the corporation, but only in common stock of the corporation, up until that time, unissued. There was in no sense a severance from the corporation assets of the subject of the dividend.

In *Hayes* v. *St. Louis Union Trust Co.*, 298 S. W. 91, the court said:

A stock dividend, which is really nothing more than a process in corporation bookkeeping, is not in any sense a real " dividend ", which *implies a severance from the corporate assets* of the subject of the dividend and a distribution thereof among the stockholders. [Italics supplied.]

The distinction between the title of a corporation and the interest of its members or stockholders in the property of the corporation is familiar and well settled. The ownership of that property is in the corporation and not in the holders of shares of its stock. The interest of each stockholder consists in the right to a proportionate part of the profits whenever dividends are declared by the corporation, during its existence under its charter, and to a like proportion of the property remaining upon the termination or dissolution of

the corporation after payment of its debts. *Gibbons* v. *Mahon*, 136 U. S. 557.

The dividend declaration of the Willys-Overland Corporation made it quite apparent that the corporation did not intend to part with any of its cash or property. All of that it needed to keep in the business. All of that it did keep in the business and paid dividends to its preferred stockholders, not in money or property, but in the unissued common stock of the corporation. I think such a stock dividend fits squarely into the description of what a stock dividend is, contained in *Eisner* v. *Macomber* and quoted by the court in *United States* v. *Mellon, supra,* as follows:

"A ' stock dividend ' shows that the company's accumulated profits have been capitalized, instead of distributed to the stockholders or retained as a surplus available for distribution in money or in kind should opportunity offer. Far from being a realization of profits of the stockholder, it tends rather to postpone such realization, in that the fund represented by the new stock has been transferred from surplus to capital, and no longer is available for actual distribution. *The essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit; on the contrary, every dollar of his original investment, together with whatever accretion and accumulations have resulted from employment of his money and that of the other stockholders in the business of the company, still remains the property of the company, and subject to business risks which may result in wiping out the entire investment.* Having regard to the very truth of the matter, to substance, and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment." [Italics supplied.]

In the majority opinion in the instant case there is this statement: " Some of the preferred stockholders insisted upon and received the dividend in cash." I wish to point out that such fact has no significance. In *United States* v. *Mellon, supra,* and *United States* v. *Davison, supra,* the Government contended that the dividend in question was not a stock dividend because, among other reasons, stockholders of the Gulf Oil Corporation holding 1,740 shares of stock received their dividend in cash, amounting to $174,000. The court in its opinion said that as to these particular stockholders it was of course a cash dividend and taxable as such, but as to the other stockholders who went along with the plan, it was a stock dividend. On that point the court said:

It is conceded that some of the stockholders took cash. As to them, it was a cash dividend, and taxable as such. But as to the defendant, and the other stockholders who received stock, it would appear under the facts to be a stock dividend, and not taxable. The question is to be determined from the result to and the effect upon the individual stockholder.

Much emphasis is laid in the majority opinion upon the fact that in *Eisner* v. *Macomber* the stock dividend was such that after it was paid, all stockholders continued to own the same proportional

interest in the corporation as before; that this was the sole basis of the court's decision; that other expressions of the court should be disregarded; and that the exemption prescribed by section 201 (f) should not be extended beyond the scope of the kind of a stock dividend present in *Eisner* v. *Macomber*. In pointing out why the dividend in the instant case was not a " stock dividend " the majority opinion says, " This was not a proportional redistribution of existing or inchoate rights. There was a substantial change in the shareholder interests not only of this petitioner but of all other shareholders as well."

So there was also in *United States* v. *Mellon*, and *United States* v. *Davison*. It does not take a mathematician to figure out that when the owners of 1,740 shares of Gulf Oil Corporation stock declined to accept a stock dividend but insisted upon and received their dividend in cash, and the balance of the stockholders received a stock dividend, there was a substantial change in the shareholder interests not only of the stockholders who owned 1,740 shares and received their dividends in cash, but of the shareholders who received their dividends in stock.

A simple illustration will serve to exemplify. Suppose we have corporation M with 100 shares of common stock. A owns 40 shares which is 40 per cent of the capital stock. B owns 40 shares, which is 40 per cent of the capital stock. C owns 20 shares, which is 20 per cent of the capital stock. A stock dividend of 100 per cent is declared, but C insists upon and receives his dividends in cash. Thereafter the capital stock is 180 shares owned as follows: A owns 80 shares, which is $44^4/_9$ per cent of the capital stock. B owns 80 shares, which is $44^4/_9$ per cent of the capital stock. C owns 20 shares, which is $11^1/_9$ per cent of the capital stock. The above illustration is just the sort of thing that happened in *United States* v. *Mellon* and *United States* v. *Davison*, as I understand it, yet the courts held in those cases that the dividends to the stockholders who accepted the plan were " stock dividends " and exempt from taxation and the Supreme Court denied a writ of certiorari.

Therefore in view of these facts, I am forced to conclude that the *essential fact* in *Eisner* v. *Macomber* is not as the majority opinion holds, that the stock dividend must be of the kind which, after it is paid, leaves all the stockholders with the same proportional interest in the corporation as they had before, but is as the court says: " The essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit." In other words, there has been no severance of anything from the corporation's assets or payment to the stockholder.

The kind of case which we have before us here should not be confused with those cases where a corporation pays a dividend by

distributing stock which it owns in some other corporation or even its own stock, which at one time was issued, and later bought up with the corporation's funds and held in its treasury. In dividends of this sort there is a real severance from the corporate assets. That kind of case was the subject of the court's opinion in *Leland* v. *Hayden*, 102 Mass. 542.

In the instant case the dividend was not declared from stock already paid for in full to the corporation and repurchased by it, but was from stock previously unissued. The stipulation shows that the common stock of the Willys-Overland Company was duly increased from $50,000,000 to $75,000,000 in May, 1920. The board of directors was authorized to appropriate 262,309 shares of the unissued common stock for the payment of dividends to the preferred stockholders.

It was out of these 262,309 unissued shares of Willys-Overland Company's common stock that petitioner's dividend was paid. For reasons which I have stated, I believe that such a dividend distribution is a stock dividend within the meaning of section 201 (f) of the Revenue Act of 1926, and that respondent's treatment of it in arriving at petitioner's tax liability for the year in question was correct.

SMITH agrees with this dissent.